The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
IN TACOMA

MAUREEN HAY, a Washington resident;
IGOR SMAL, a Washington resident;
HANNA SMAL, a Washington resident;
JORDAN SMITH, a Washington resident;
CAMERON SMITH, a Washington resident;
ALEX KULIBABA, a Washington resident;
NATALYA MANCHIK, a Washington
resident; DAN HART, a Washington resident;
SHAWNA HART, a Washington resident;
PETER MANNING, a Washington resident;
ADRIENNE MANNING, a Washington
resident; TAWNY CABRAL, a Washington
resident; WHITNEY DECORIA, a
Washington resident; RYAN DECORIA, a
Washington resident; JOSEPHINE PANGAN,
a Washington resident; AUBREY
BRADLEY, a Washington resident; OZNUR
BRADLEY, a Washington resident; CODY
WHITNEY, a Washington resident;
YVONNE WHITNEY, a Washington
resident;  HAROON SAKHI, a Washington
resident; ADELA SAKHI, a Washington
resident; CHRISTINE JOHNSON, a
Washington resident; KEN EDWARDS, a
Washington resident; SHERRI PENA, a
Washington resident; YONG LIM, a
Washington resident; AMBER LEE, a
Washington resident; WHITNEY SARGENT,
a Washington resident; YEVGENIY "JOHN"
ZADNEPROVSKIY, a Washington resident;
MARINA ZADNEPROVSKIY, a

Cause No. 3:17-cv-05077-RJB

**PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:**
**September 15, 2017**

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

Washington resident; EUN YOUNG LEE, a
Washington resident; KURT BERG, a
Washington resident; TRACY BERG, a
Washington resident; PETE NITO, a
Washington resident; JENELYN NITO, a
Washington resident; WILLIAM DUNGER, a
Washington resident; BANNY CHHOEUN, a
Washington resident; SARETH CHHOEUN,
a Washington resident; ADAM JACKSON, a
Washington resident; SARA JACKSON, a
Washington resident; LAYLA BUGADO, a
Washington resident;
BRAD BUGADO, a Washington resident;
PHU DO, a Washington resident; HIEN
TRAN, a Washington resident,

                    Plaintiffs,

vs.

AMERICAN SAFETY INDEMNITY
COMPANY, a foreign insurer;

                  Defendants.

## I.     INTRODUCTION

This is an insurance coverage action filed against American Safety Indemnity Company (hereinafter "ASIC") claiming liability insurance coverage for property damage to the homes in the Valley Haven housing community (hereinafter "Project").  In the underlying action, Plaintiffs filed claims against the developer of the project, Highmark Homes LLC (hereinafter "Highmark"). Highmark later filed a third-party complaint against multiple of its subcontractors for breach of contract and indemnity. Before trial, Plaintiffs settled their claims with Highmark, taking in part a covenant judgment and an assignment of any claims Highmark had against ASIC.

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

Plaintiffs' motion seeks to have this Court rule as a matter of law that ASIC committed bad faith by failing to accept Highmark's multiple tenders.  ASIC's improper rejection of its duty to defend Highmark is based on evidence extrinsic to the complaint which under Washington law is *per se* bad faith.

## II.    STATEMENT OF FACTS

This case arises out of a construction defect case filed by homeowners who purchased their homes from the developer and general contractor of the project, Highmark (Declaration of Todd K. Skoglund ¶ 3 Ex. 3.) Highmark purchased the lots in separate transactions and/or takedowns.  The first purchase/takedown included 8 lots; once the construction was completed and homes were sold, Highmark purchased another 10 lots. Once the construction was completed on those lots, Highmark purchased the final 11 lots in two more takedowns (Skoglund Dec., ¶ 1 Ex. 1., ¶ 2 Ex. 2., ¶ 4 Ex. 4, ¶ 5 Ex. 5. & Ex. 14.)

Highmark was insured by several insurance carriers, including American Safety Indemnity Company (hereinafter "ASIC").  ASIC's three policy periods covered July 17, 2010 through July 17, 2013 ( Dkt. 15-1, 15-2 & 15-3.)

The ASIC policies provide the following coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

> \* \* \*

> This insurance applies to "bodily injury" and "property damage" only if:

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 3
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and Prior to the policy period, no insured listed under Paragraph 1. of Section II –

(Dkt. 15-1, Ex. A pg. 6)

After moving into their homes, Plaintiffs began noticing issues with their homes (Decl. of Skoglund ¶ 12 Ex. 12.)  Dimensional Building Consultants' report showed serious issues existed at the project.  As a result of the severity of those defects combined with Highmark's refusal to respond to the statutory required notice, Plaintiffs were forced to file a lawsuit against Highmark (*Id*.)  Plaintiffs filed a complaint against Highmark on May 15, 2014. (*Id* & Decl. Skoglund ¶ 7 Ex. 7.)

To further investigate the issues, the homeowners employed: Dimensional Building Consultants (hereinafter "DBC" as to exterior envelope issues and   Dibble Engineering (hereinafter "Dibble") as to structural safety concerns

After acquiring the project's building plans, reviewing questionnaires completed by each owner including attached photographs identifying issues common to each home, speaking with the City of Fife building officials and reviewing its files, and after reviewing Defendants' production, the experts inspected the homes (Decl. Skoglund ¶ 11 Ex. 11 & ¶ 12 Ex. 12.)

In evaluating the means and methods of construction employed by Highmark, and reaching conclusions whether an aspect of its work is "defective", Plaintiffs' experts rely on the following applicable metrics: (i) 2009 International Residential Code, (ii) the Building

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 4
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

Plans, and (iii) the building material manufacturers' installation requirements. Each applies to Highmark's work and each is violated in multiple ways (*Id.*)

The experts' analysis confirmed Highmarks' siding, window and sliding door related work fails to adhere to the minimum standards identified in the IRC and the building plans, and fails to comply with the siding and window manufacturers' installation requirements (*Id.*)

On February 26, 2016, the Superior Court heard oral arguments and the Court agreed with plaintiffs' experts and entered an order stating in part that four IRC requirements for T1-11 siding installation were violated, two building plan requirements were violated, six LP siding manufacturers' installation requirements were violated, one window and sliding door installation IRC requirement was violated, and three window manufacturers' installation requirements were violated (Decl. Skoglund ¶ 13 Ex. 13.)

On May 22, 2014, Highmark tendered the claims to ASIC (Dkt. 15-4, Ex.D.) The tender included the Plaintiffs' notice of claims and a copy of their complaint.  Shortly thereafter on May 29, 2014, Sarah McDonald, an ASIC representative sent an email to Highmark's counsel requesting additional information outside the complaint, specifically including a request for timing of completion and sale of the homes (Decl. Skoglund ¶ 8 Ex. 8.)

Highmark's counsel produced the information in a June 13, 2014 letter (Decl. Skoglund ¶ 9 Ex. 9.) ASIC then asked Highmark's counsel to confirm, without explaining the need for such information, whether Highmark worked on all 29 houses in a June 24, 2014 email and Highmark confirmed the information on July 15, 2014 (Dkt. 15-5, Ex. E.)

On August 7, 2014, almost three months since the original tender, ASIC denied Highmark's tender (Dkt. 15-5, Ex. F.) On September 30, 2015, Sarah McDonald spoke with

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 5
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

Highmark's counsel and confirmed Highmark was being defended by another carrier, Hannover, in the Valley Haven matter (Decl. Skoglund ¶ 10 Ex. 10.) Highmark retendered the claims on October 21, 2014 and specifically identified that the lots were purchased in four different parcels, not all at once in a single purchase. (Dkt. 15-5, Ex. G.)

On November 20, 2016, Highmark and Plaintiffs settled the underlying case. (Decl. Skoglund ¶ 15 Ex. 15.)  As part of the settlement, Highmark agreed to allow a reasonable judgment to be entered against it and assigned all of its claims against ASIC and other carriers to Plaintiffs (*Id.*)

On November 21, 2016, Plaintiffs sent the statutory notice required under the Insurance Fair Conduct Act ("IFCA") to ASIC (Dkt. 15-5, Ex. I.)

### III.  EVIDENCE RELIED UPON

The Plaintiffs rely on pleadings and papers on file, and the First Declaration of Todd K. Skoglund and the exhibits attached thereto.

### IV. ISSUES PRESENTED

1.     Did ASIC commit bad faith when it looked to facts outside the complaint to deny Highmark's tender?

2.     Does ASIC's bad faith estop it from denying coverage?

### V.     ARGUMENT

**A.     ASIC violated the Insurance Fair Conduct Act.**

In 2007 the Washington legislature passed IFCA. IFCA outlines and describes specific conduct by an insurance carrier that is prohibited under Washington law.  IFCA is designed to protect policyholders, like Highmark, from the type of unfair and deceptive practices ASIC

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 6
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

engaged in here, which includes misinterpreting the terms of its policy, misapplying its exclusions, and not promptly responding to its insured.

Under IFCA a claimant must provide the insurance carrier notice of its intent to file its claim 20 days before filing a lawsuit against the carrier  RCW 48.30.015(8). In this case Plaintiffs sent their notice on November 21, 2016 and filed their lawsuit on January 31, 2017. The filing was proper.

**B.    ASIC breached its duty to defend.**

  **1.    Washington's Rules governing insurance policy interpretation.**

 The ASIC Policies are governed by, and must be interpreted under Washington law. See e.g. Fluke v. Hartford Accident & Indemnity Company, 102 Wn.App. 237, 248-49, 7 P.3d 825 (2000).

First, Washington law requires that insurance policies be interpreted as they would be by an average purchaser of insurance, as opposed to a skilled lawyer or technical expert. See Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 881, 784 P.2d 507 (1990). Accordingly, insurance policies must be interpreted according to their plain language and in a manner which gives meaning to each policy term. See PUD No. 1 v. Int'l Ins. Co., 124 Wn.2d 789, 797, 881 P.2d 1020 (1994).

Second, Washington law requires that insurance policies "be liberally construed to provide coverage whenever possible." Odessa School District v. Ins. Co. of America, 57 Wn.App. 893, 897, 791 P.2d 237 (1990).   Therefore, "any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in Insured's

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 7
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

favor." Phil Schroeder Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 69, 659 P.2d 509, 511 (1983).

Third, Washington law prohibits insurance policies from being "interpreted" in a way that effectively inserts new language to restrict or narrow coverage. See American Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co., Inc., 134 Wn.2d 413, 430, 951 P.2d 250 (1998) ("We will not add language to the policy that the insurer did not include."); see also Emter v. Columbia Health Services, 63 Wn.App. 378, 382-83 819 P.2d 390, 391 (1991), review denied, 119 Wn.2d 1005 (1992) (Washington law does not even allow the insurer to insert commas it had omitted).

Fourth, Washington law prohibits insurance policies from being "interpreted" in a way that has a nonsensical result or renders policy provisions illusory. See PUD No. 1 v. Int'l Ins. Co., 124 Wn.2d at 799, citing Transcontinental Ins. Co. v. P.U.D. Util. Sys., 111 Wn.2d 452, 457, 760 P.2d 337 (1988) (court should not give policy language a "strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective."); see also Quadrant Corp. v. American States Ins. Co.,154 Wn.2d 165, 184-85, 110 P.3d 733 (2005) (insurance policies "must be construed to avoid rendering contractual obligations illusory.").

If, after applying the foregoing rules, a court ultimately concludes that there is more than one reasonable interpretation of policy language at issue, that language is deemed "ambiguous" and construed in favor of coverage. See State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wn. App. 358, 363, 88 P.3d 986, 989 (2004).  Washington law prohibits the "weighing" of competing reasonable interpretations because an insurer cannot

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 8
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

escape liability "so long as coverage is available under <u>any</u> reasonable interpretation." Williston on Contracts §49:15 (4th ed.) (emphasis added).

In order to avoid coverage in this case or that an exclusion applies, ASIC must show that the <u>only</u> reasonable way to interpret its Policy is against coverage. ASIC cannot satisfy that substantial burden here.

### 2.     Rules governing ASIC's duty to defend.

A legal defense is one of the primary benefits of general liability policies (such as the ASIC Policies) and the rules governing an insurer's duty to defend are firmly established under Washington law as well:

First, "[t]he duty to defend arises at the time an action is first brought, and is based on the potential for liability." <u>Truck Ins. Exch. v. VanPort Homes, Inc.</u>, 147 Wn.2d 751, 760, 58 P.3d 276, 281-82 (2002). Accordingly, ASIC's duty to defend arose at the time the underlying lawsuit was filed in May of 2014.

Second, the duty to defend is broader than the duty to indemnify. Accordingly, "[a]n insurer has a duty to defend 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" <u>Woo v. ASIC Ins. Co.</u>, 161 Wn.2d 43, 52-53, 164 P.3d 454 (2008), <u>quoting</u> <u>Truck Ins. Exch. v. VanPort Homes, Inc.</u>, 147 Wn.2d 751, 760, 58 P.3d 276, 281-82 (2002)); <u>see also</u> <u>Baugh Constr. Co. v. Mission Ins. Co.</u>, 836 F.2d 1164, 1168 (9th Cir. 1988) (applying Washington law) ("An insurer must defend the insured if a claim is potentially covered by a policy.").

Third, "[a]n insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.'" <u>Woo</u> at 52-53. Accordingly, "[i]f the

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 9
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend," Truck Ins. Exch., 147 Wn.2d at 760, and the insurer must "follow well established Washington State law giving the insured the benefit of any doubt as to the duty to defend". American Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 413, 229 P.3d 693 (2010).

Fourth, "[t]he insurer may not rely on facts extrinsic to the complaint to deny the duty to defend – it may only do so to trigger the duty." Woo, 161 Wn.2d at 54; see also Truck Ins. Exch., 147 Wn.2d at 761 ("Put simply, an insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend where, as here, the complaint can be interpreted as triggering a duty to defend."); Wendel v. Travelers Casualty And Surety Company Of America, 2012 WL 1038617 (9th Cir. Mar. 29, 2012) (extrinsic evidence cannot be used to deny insurer's duty to defend even if the extrinsic evidence has no bearing on the truth of the allegations asserted in the underlying lawsuit).

Accordingly, ASIC cannot rely on facts extrinsic to the complaint, as it did here, to deny having a duty to defend the insured.

Fifth, an insurer must give the insured the benefit of the doubt by defending under a reservation of rights or seeking declaratory relief whenever the duty to defend cannot be determined by the underlying complaint and policy alone. Truck Ins. Exch., 147 Wn.2d at 761 ("If the insurer is unsure of its obligations to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel.") (internal citations omitted) In fact, an insurer's reliance on a questionable interpretation of its own policy without defending the insured under

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 10
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

a reservation of rights or seeking declaratory relief constitutes bad faith as a matter of Washington law. See American Best Food, 168 Wn.2d at 413.

"In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability." Woo, 161 Wn.2d at 53. Thus, if there is any conceivable possibility of coverage based on the allegations of the complaint and the language of the insurance policy, the insurer must defend. In this case, the underlying lawsuit clearly triggered ASIC's duty to defend its Insured. Id.

3.     The Underlying Lawsuit triggered ASIC's duty to defend Highmark.

Applying the above rules, ASIC had a duty to defend its Insured if there was any conceivable possibility that the Underlying Lawsuit, construed liberally, alleged: (a) "property damage;" (b) caused by an "occurrence;" (c) during the policy period.

(a)     "Property Damage"

The ASIC Policies define "property damage" as "[p]hysical damage to tangible property, including all resulting loss of use of that property."

The underlying lawsuit alleged that the insureds are liable for both physical damage to the Project and loss of use at the Project. For example, Paragraph 55 expressly stated "property" damage had occurred.   Thus, the "property damage" element triggering ASIC's duty to defend was met and they should have fulfilled their obligation.

(b)     "Occurrence"

The ASIC Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Dkt. 15-1, Ex. A,

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 11
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

15-2, Ex. B & 15-3, Ex. C.) Under Washington law, an "accident" is defined as "an unexpected, unforeseen, or un-designed happening or consequence from either a known or an unknown cause." <u>Yakima Cement Products Co. v. Great American Ins. Co.</u>, 93 Wn.2d 210, 215, 608 P.2d 254 (1980) (Washington Supreme Court held that the insured's negligent manufacturing was an "accident" and hence an "occurrence").

In the present instance, there is no question an occurrence occurred during the policy period. There are <u>no</u> allegations that the resulting physical damage or loss of use was expected, foreseen, designed or intentional.   Thus, the "occurrence" element triggering ASIC's duty to defend was satisfied.

(c)      "During the Policy Period"

The ASIC Policies incepted on July 17, 2010, and the last policy expired on July 17, 2013.  The insureds started work in 2012 following the purchase of 8 lots in March 2012 and received certificates of occupancy on the last homes in July 2013 (*Id*.)  The damage in the underlying lawsuit was alleged to occur as a result of work performed during the policy periods and started occurring right after the work was completed and exposed to the elements (Decl. Skoglund ¶ 11 Ex. 11 & ¶ 12 Ex. 12.)    Thus, the policy period element triggering ASIC's duty to defend was satisfied.

**4.      ASIC's duty to defend was triggered.**

In the present instance, there is no doubt ASIC's duty to defend was triggered when it received the tender with the complaint attached on May 22, 2014 (Dkt. 15-4, Ex. D.)

**C.   ASIC's exclusions are not applicable.**

Although Plaintiff believes ASIC's exclusions are inapplicable, the following arguments show even if the Court determines ASIC did not commit bad faith, the claims made

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 12
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

against its insureds are still covered.

**1.      The tract housing exclusion.**

The policy reads,

**Tract Housing**
"Bodily injury", "property damage" or "person or advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development".

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in this endorsement, the following is added to **SECTION V – DEFINITIONS:**

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

(Dkt. 15-1, Ex. A pg. 66)

**(a) Use of extrinsic evidence**

The documentary evidence is significant since it shows that ASIC, following the tender of defense but before denying a defense to Highmark, requested Highmark to provide:

1.   A homeowner matrix showing the dates of completion and sale for the houses at issue
2.   Any documentation that would indicate when Highmark completed its work on the subject project

(Decl. Skoglund ¶ 8 Ex. 8.)

This request sought information regarding the timing of completion and sale of the houses (to determine the time period for an occurrence under the policies and whether the work was

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 13
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

completed during the ASIC policy periods) (*Id.*) In a follow up email, Ms. McDonald requested confirmation that the work was performed by Highmark (to determine if the construction work on all 29 homes was performed "by our insured")(Dkt. 15-5, Ex. E.) (Decl. Skoglund ¶ 8 Ex. 8.) Ms. McDonald received replies to these inquiries and then used that information in her letter to Highmark denying a defense to Highmark. Ms. McDonald's only purpose in conducting this post-tender investigation had to be that she recognized, by the language of the complaint, that until she obtained information that all 29 homes were completed during a policy period, which policy periods, and that all work was performed "by our insured," it was conceivable the exclusionary language of this Tract Housing exclusion did not apply.[1]  "Conceivable" is the very word the Washington Supreme Court says creates the difference between the obligation to defend or not.[2]  ASIC needed confirmation of when the property damage occurred (the "occurrence") and, quite clearly, whether or not the work was performed "by our insured."   In addition, arguably ASIC needed to see what policy period the homes were completed and sold in because if less than 25 homes were completed and sold during a policy period, the exclusion may not have applied[3].  Having conducted that investigation, ASIC cannot then rely upon this clarification of the uncertainty to deny its duty to defend Highmark.  That is precisely, however, what ASIC did in this case.

---

[1] Although ASIC cited to several policy sections in its denial letter, it denied defense to Highmark based solely upon this Tract Housing exclusion, stating in the denial letter that it was relying upon Highmark's counsel's confirmation that Highmark worked on all 29 houses.  Skoglund Dec., Ex. 9, pp 1, 6.
[2] An insurer in Washington must defend the complaint unless the allegations are "clearly not covered by the policy." *Woo*, 161 Wn.2d 43, 52-53; the duty exists if the allegations of the complaint "conceivably impose liability on the insured. *Id.*; *Truck Insurance Exchange*, 147 Wn.2d 751, 760.
[3] There are three applicable policies and the homes were completed and sold in different policy periods. Thus, there is an argument homes sold in prior policy periods before the 25-home exclusion arguendo applied are covered under the policy.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 14
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

In <u>Woo v. ASIC</u>, the court emphasized how, at the time ASIC decided to deny a defense to Dr. Woo, it had equivocal information regarding the state of the law before it. Woo, at 462-463. Similarly, in <u>American Best Food</u>, Alea London had equivocal information regarding coverage issues before it at the crucial time of making its decision. <u>American Best Food</u>, at 127-129. The Supreme Court determined that the insurers' decisions in <u>Woo</u> and <u>American Best Food</u> to weigh these uncertainties in their own favor was the occurrence of the breach of each insurer's duty to defend: "However, the duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, Fireman's did the opposite – it relied upon an equivocal interpretation of case law to give *itself* the benefit of the doubt rather than its insured." <u>Woo</u>., at 164 P.3d 463.

The same court found a bad faith breach of Alea London's duty to defend "when the insurer . . . put its own interests ahead of its insured when it denied a defense based on an arguable legal interpretation of its own policy." <u>American Best Food</u>, 229 P.3d at 700. Finally, <u>Truck Ins. Exch.</u> recognized that when an insurer is in doubt or "uncertain of its duty to defend,"[4] as Ms. McDonald was here, the insurer may conduct an investigation if "the allegations of the complaint are ambiguous or inadequate." <u>Truck Ins. Exch.</u>, 58 P.3d at 282. *However, once the insurer conducts an investigation, it may not use information gathered in the investigation to deny a defense*. "Put simply, an insurer may not rely on facts extrinsic to the complaint in order to *deny* its duty to defend where, as here, the complaint can be

---

[4] <u>Truck Ins. Exch.</u>, 147 Wn.2d at 761, 58 P.3d 276; <u>Woo v. Fireman's Fund</u>, 161 Wn.2d , 164 P.3d 454, 460.

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

interpreted as triggering the duty to defend.  If in doubt, it may file a declaratory judgment action."  Id.  Ms. McDonald obviously believed the allegations of the complaint were inadequate to identify if the complaint alleged an occurrence, whether 25 homes were sold during a single policy period or during all three policy periods, and whether or not the work was performed "by our insured."  She sought clarification on each of these issues, but ASIC's decision to deny a defense to Highmark based on the clarifications she received is bad faith failure to defend.  Woo; American Best Food; Truck Ins. Exch.  See also Wendel v. Travelers Casualty, supra, holding that extrinsic evidence cannot be used to deny the duty to defend even if that evidence has no bearing on the truth of the allegations in the underlying lawsuit. Fifteen years ago the Washington Supreme Court made this rule inviolate in Truck Ins. Exch., supra, and ASIC has violated it.[5]

**(b) The Tract Housing exclusion is not applicable**

The tract housing exclusion does not apply as the project was not constructed in phases.  Each word or phrase in this exclusion is significant here.

Webster defines 'phase' as a distinct stage of development Websters II New Riverside University Dictionary.  In this matter, Highmark did not construct this project in phases, rather Highmark purchased a group of lots or took down a group of lots, constructed homes in

---

[5] No Washington state appellate case has allowed an insurer to violate this rule.  Other Courts within this Western District have concluded that denying the duty to defend following an investigation to determine if a party is an insured does not violate the Truck Ins. Exch. rule.  Allstate v. A.R., (Case No. C13-6041 RBL July 21, 2014); Hartford Fire Ins. Co v. Leahy, 774, F.Supp.2d 1104 (W.D. Wash 2011).  But this is far as the courts of this District have allowed. See Tim Ryan Construction v. Burlington Insurance, No. C12-5770 BHS March 22, 2013) ("To have found it necessary to review extrinsic evidence, Burlington must have found coverage was unclear from the face of the complaint" and "Burlington acted in bad faith . . . resorting to extrinsic evidence to support its denial of its duty to defend."); Madera West Condominium v. First Specialty, No. C12-0857 JCC August 6, 2013) (conducting an internet search of insured's website to determine when insured's project was completed and then denying the tender was bad faith).

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

phases and made a business decision to buy or not buy additional lots.   Although the construction of the houses in each take down or purchase was phased, the purchase or takedown of lots was not.  Each purchase or take down of lots was a completely separate and distinct transaction (Skoglund Dec., ¶ 1 Ex. 1., ¶ 2 Ex. 2., ¶ 4 Ex. 4, ¶ 5 Ex. 5. & Ex. 14.)

The only way one could argue that Highmark developed this project in phases would have been if Highmark bought all 29 lots in a single transaction; however, it did not do so. Highmark clearly could have walked away at any time after one of the take downs but it made a decision to buy another set of lots.   Thus, it was a separate and distinct transaction and the fact the homes were in the same *project* were happenstance.

Undoubtedly, ASIC will argue the term "phase" should be broadly construed to deny coverage under this exclusion, but interpreting the policy as such runs contrary to Washington law, which requires that insurance policies "be liberally construed to provide coverage whenever possible." Odessa School District v. Ins. Co. of America, 57 Wn.App. 893, 897, 791 P.2d 237 (1990). Any and all doubts, uncertainty, or ambiguity must be resolved in favor of Highmark, not ASIC. *Phil Schroeder Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 69, 659 P.2d 509, 511 (1983); see also PUD No. 1 v. Int'l Ins. Co., 124 Wn.2d at 799 (court should not give policy language a "strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective.") Accordingly, the Court should interpret the term construction in favor of Highmark, and rule as a matter of law the tract housing exclusion does not apply.

Notwithstanding that the tract exclusion as drafted does not apply, the Court should enforce coverage. To find otherwise would make the policy illusory as a whole. See Quadrant

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 17
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

Corp. v. American States Ins. Co., 154 Wn.2d at 184-85 (insurance policies "must be construed to avoid rendering contractual obligations illusory.") Highmark's application expressly said that its business purpose was to do small groups of homes, which is exactly what it did in this matter ( Decl. Skoglund ¶ 16 Ex. 16.)  For ASIC to issue Highmark a policy that specifically excludes the work described in its policy application is unfair, unjust, and unconscionable.

**D.      ASIC is liable for Bad Faith and at least one violation of the CPA and IFCA**

Bad faith claims, insurance-related CPA claims, and IFCA claims are similar. An insured's assertion of bad faith against her insurer is a tort claim. *Safeco Ins. Co. of Am. V. Butler*, 823 P.2d 499, 503 (Wash. 1992). An insurance carrier's denial of coverage under Washington law is made in bad faith if it is unreasonable, frivolous, or unfounded. *Overton*, 38 P.3d at 329-30. A Violation of Washington's insurance regulations is evidence of bad faith. *See Coventry Assocs. V. Am. States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998). Due to the fact Washington declared that insurance impacts an important public interest, an insured establishes a CPA violation when it proves injury to its business or property as a result of an act in bad faith. *See Overton*, 38 3.Pd at 330 (citing RCW § 19.86.020); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) ("[T]he business of insurance affects the public interest . . . "); RCW § 48.01.030 (declaring that "[t]he business of insurance is one affected by the public interest"); *see also Indus. Indem. Co. of the N.W. v. Kallevig*, 792 P.2d 520, 530 (Wash. 1990) (holding that a single violation of WAC § 284-30-330 is sufficient to support a CPA violation. Unlike the CPA, IFCA directly targets insurance practices. IFCA gives a cause

of action to an insured against an insurer who "unreasonably denie[s] a claim for coverage or payment of benefits." RCW § 48.30.015(1).

     a.  <u>ASIC's reliance upon extrinsic evidence to deny the duty to defend was improper and bad faith</u>

The duty of good faith owed by an insurer to its insured is statutory. <u>Anderson v. State Farm Mutual Ins. Co.</u>, 101 Wn.App. 323, 329, 2 P.3d 1029 (2000).  RCW 48.01.030 requires insurers to deal with their insureds in good faith.  <u>Kallevig</u>, 114 Wash.2d at 916. RCW 48.01.030 provides in relevant part, that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."

An insurer's breach of its duty of good faith represents an unfair trade practice actionable under the CPA. <u>See</u> <u>Mason v. Mortgage Am., Inc.</u>, 114 Wash.2d 842, 855-56, 792 P.2d 142 (1990); RCW 19.86.020, 090. To prevail, an insured must prove among other things that "the defendant's act was unfair or deceptive." <u>Insurance Co. of Pennsylvania v. Highlands Ins. Co.</u>, 59 Wash.App. 782, 786, 801 P.2d 284 (1990), <u>review</u> <u>denied</u>, 116 Wash.2d 1032, 813 P.2d 583 (1991). To establish a breach of this duty, a party needs to prove that the defendant acted unlawfully and in violation of public policy. <u>Salois v. Mutual of Omaha Ins. Co.</u>, 90 Wash.2d 355, 358, 581 P.2d 1349 (1978); <u>Highlands Ins. Co.</u>, 59 Wash.App. at 786, 801 P.2d 284. An insurer violates its duty to act in good faith when it acts without reasonable justification. <u>Kallevig</u>, 114 Wash.2d at 917; <u>Whisman v. West Am. of Ohio Casualty Group of Ins. Cos.</u>, 38 Wash.App. 580, 585, 686 P.2d 1086 (1984).

When an insurance carrier improperly refuses to defend an insured the Ninth Circuit's ruling in *Am. Economy* dictates that a court must hold ASIC acted in bad faith as a matter of

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 19
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

law.  The *Am. Economy* court concluding that because the insurer did not "give to the insured

'the benefit of any doubt as to the duty to defend,'" it acted in bad faith as a matter of law. 534

Fed. Appx. At 646 (quoting *Am. Best Food, Inc. v. Alea London Ltd.*, 229 P.3d 693, 700

(Wash. 2010)).

ASIC's denial improperly relied upon facts outside the complaint to deny the

insureds a defense and therefore violated Washington law. See Woo, 161 Wn.2d at 54; see

also Truck Ins. Exch., 147 Wn.2d at 761 ("Put simply, an insurer may not rely on facts

extrinsic to the complaint in order to deny its duty to defend where, as here, the complaint

can be interpreted as triggering a duty to defend.").

Undoubtedly, ASIC will attempt to argue that any request for additional information

was only to support the known facts in the complaint but as argued above, that belies Ms.

McDonald's own statements. Ms. McDonald clearly needed confirmation of facts in the

complaint and the investigation into that confirmation is not permitted under Washington

law.  Any attempt by ASIC to argue the Court should allow at least a small investigation or

confirmation should be rejected by this Court as there is simply no support for it and it

would create a very slippery slope and destroy the clear and concise rules set forth by

Washington Courts.

In addition, its analysis was wrong and it should have accepted the tender of the

claims.   Truck Ins. Exch. makes it abundantly clear that the duty to defend is to be

determined by the allegations of the complaint and, if it is necessary to clarify

circumstances with an investigation, an insurer may do so, but if it conducts any

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 20
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

investigation, it must also defend.  Failure to defend at that point or denying the defense on the basis of information gleaned from the investigation is bad faith as a matter of law.

b. ASIC Violated IFCA.

Under Washington law, a violation of WAC 284-30-330 et seq. is an unfair trade practice per se, and is also a violation of RCW 48.30.15 Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wn.2d 907, 923, 792 P.2d 520 (1990); Starczewski v. Unigard Ins. Group, 61 Wn.App. 267, 273, 810 P.2d 58, review denied, 117 Wn.2d 1017, 818 P.2d 1099 (1991). Similarly, an insurer's bad faith breach of its obligation to its insured constitutes a per se violation of the "unfair or deceptive act or practices" element of a Consumer Protection Act claim, which is regarded as evidence of bad faith.  Overton v. Consolidated Ins. Co., 101 Wn.App. 651, 6 P.3d 1178 (2000); see also Sharbono v. Universal Underwriters Insurance, 139 Wn.App 383, 414, 161 P.3d 406 (2007). Where an insurer commits bad faith, a rebuttable presumption of harm is created, and it is the insurers - not the insureds - obligation to rebut such presumption. Moratti v. Farmers Insurance, 162 Wn.App. 495, 512, 254 P.3d 939, 942 (2011).

To prevail on an unfair practice claim for violation of WAC 284-30-330 et seq. – which may occur regardless of whether an insurer breached its duty to defend, indemnify, or settle - an insured must show it was harmed by the violation/unfair practice. St. Paul Fire & Marine Ins. Co. v. Onvia Inc., 165 Wn.2d 22, 196 P.3d 164 (2008). An insured is considered harmed when a judgment is entered against it. Moratti, 162 Wn.App at 510-511; Safeco Insurance v. Butler, 118 Wn.2d 383, 399, 823 P.2d 499 (1992).

Highmark has proven a violation of IFCA as a matter of law as ASIC failed to accept Highmark's tender.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 21
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

IFCA allows Highmark to maintain an IFCA claim against ASIC.   See Trinity Universal v. Ohio Casualty, 176 Wn.App. 185, 312 P.3d 976 (2013).   The Trinity Court recognized a right of a "covered person" to assert an IFCA claim, citing the language of RCW 48.30.015(4).   The court holding that a defendant who was not defended by its insurer had a right to assert an IFCA claim.

**E.     ASIC Acted In Bad Faith As A Matter Of Washington Law And Is Estopped From Denying Coverage And Liable For Any Judgment In The Underlying Lawsuit**

As explained above, ASIC's reliance on facts outside the complaint and improper exclusions to repeatedly deny the insureds a defense is unreasonable and violates Washington law as it improperly relied upon extrinsic evidence.   Having wrongfully refused to defend an insured or seek declaratory relief, it follows that ASIC has acted in bad faith under Washington law.

In <u>American Best Food</u>, the Washington Supreme Court established that an insurer acts in bad faith as a matter of law whenever the insured wrongfully refuses to defend or seek declaratory relief:

> Again, if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. *Truck Ins. Exch.*, 147 Wash.2d at 760, 58 P.3d 276 (citing *Kirk*, 134 Wash.2d at 561, 951 P.2d 1124). Exclusions are interpreted narrowly. *Phil Schroeder*, 99 Wash.2d at 68, 659 P.2d 509. In order to put the incentives in the right place and because it is often impossible for an insured to prove damages for wrongful refusal to defend, we have established a remedy that does not require it. *See, e.g., Truck Ins. Exch.*, 147 Wash.2d at 765, 58 P.3d 276; *Kirk,* 134 Wash.2d at 560, 951 P.2d 1124*; Butler*, 118 Wash.2d at 393-94, 823 P.2d 499. It cannot be said that the insurer did not put its own interest ahead of its insured when it denied a defense based on an arguable legal interpretation of its own policy. Alea failed to follow well established Washington State law giving the insured the benefit of any doubt as to the duty to defend and failed to avail itself of legal options such as proceeding under a reservation of rights or seeking declaratory relief. Alea's

1   failure to defend based upon a questionable interpretation of law was unreasonable
2   and Alea acted in bad faith as a matter of law.

3   Id. at 229 P.3d 693, 700 (2010).

4         That is precisely the case here: ASIC wrongfully denied having a duty to defend

5   Highmark based on a questionable interpretation of the policy; ASIC dug its heels and refused

6   to defend Highmark under a reservation of rights; and ASIC failed to seek declaratory relief.

7   Under American Best Food reasoning, ASIC acted in bad faith as a matter of law.

8         The Washington Supreme Court has, moreover, established the appropriate remedy for

9   an insurer's failure to provide a defense in bad faith – estoppel and liability for the underlying

10  judgment:

11        One of the benefits to this insurance contract is that the insurer will provide a defense
12        when a claim arises alleging facts that may be covered by the contract. In this case, the
          insurer breached the contract by failing to provide a defense in bad faith. The insured
13        did not receive the benefit of the bargain, and we assume the insured was harmed by
          the bad faith breach. We feel it is appropriate to estop the insurer from arguing a
14        coverage defense when the insurer breached the contract in bad faith. In such a
          situation, any claim that should have been defended, but was not, will create liability
15        for the insurer to pay at least policy limits.

16  Kirk v. Mount Airy Ins. Co, 134 Wn.2d 558 (1998)(emphasis added).

17        To allow otherwise, as the Washington Supreme Court explained, would render an

18  insurer's duty to act in good faith meaningless, and incentivize insurers to abandon their

19  insureds by refusing to defend without any consequence:

20        Without coverage by estoppel and the corresponding potential liability, an insurer
21        would never choose to defend with a reservation of rights when a complete failure
          to defend, even in bad faith, has no greater economic consequence than if such refusal
22        were in good faith. The requirement of acting in good faith cannot be rendered
          meaningless.
23  (Id.)

24        Having denied Highmark a defense in bad faith, ASIC is estopped from denying

25  coverage, and additionally liable for the judgment entered against it in the underlying lawsuit.

PLAINTIFFS' MOTION FOR SUMMARY                **CASEY & SKOGLUND PLLC**
JUDGMENT - 23                                 130 NICKERSON STREET, SUITE 210
(Cause No. 3:17-cv-05077-RJB)                 SEATTLE, WA 98109
                                              T: 206.284.8165 | F: 206.456.4210

# CONCLUSION

ASIC should be held liable for breaching its duty to defend and its actions and omissions amount to bad faith and thus, it should be precluded from denying coverage - even beyond any policy limits.

DATED this 20th day of August, 2017.

**CASEY & SKOGLUND, PLLC**

By: _/s/ Todd K. Skoglund_____
    Todd K. Skoglund, WSBA #30403
    130 Nickerson Street, Suite 210
    Seattle, Washington, 98109
    Telephone: (206) 284-8165
    Facsimile: (206) 456-4210
    Email: todd@casey-skoglund.com
    Attorney for Plaintiffs

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 24
(Cause No. 3:17-cv-05077-RJB)

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210

**CERTIFICATE OF SERVICE**

Pursuant to RCW 9A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 20th day of August, 2017, the document attached hereto was presented to the Clerk of the Court for filing and uploading into the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notifications of such filing to the following person:

Stephania Denton, WSBA No. 21920
Lane Powell PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
T: 206.223.7000
F: 206.223.7107

Executed on this 20th day of August, 2017 at Portland, Oregon.

_s/ Sarah Noble_
Sarah Noble, Office Manager

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 25
(Cause No. 3:17-cv-05077-RJB)

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA  98109
T: 206.284.8165 | F: 206.456.4210