UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAUREEN HAY, a Washington resident, IGOR SMAL, a Washington resident, HANNA SMAL, a Washington resident, JORDAN SMITH, a Washington resident, CAMERON SMITH, a Washington resident, ALEX KULIBABA, a Washington resident, NATALYA MANCHIK, a Washington resident, DAN HART, a Washington resident, SHAWNA HART, a Washington resident, PETER MANNING, a Washington resident, ADRIENNE MANNING, a Washington resident, TAWNY CABRAL, a Washington resident, WHITNEY DECORIA, a Washington resident, RYAN DECORIA, a Washington resident, JOSEPHINE PANGAN, a Washington resident, AUBREY BRADLEY, a Washington resident, OZNUR BRADLEY, a Washington resident, CODY WHITNEY, a Washington resident, YVONNE WHITNEY, a Washington resident, HAROON SAKHI, a Washington resident, ADELA SAKHI, a Washington resident, CHRISTINE JOHNSON, a Washington resident, KEN EDWARDS, a Washington resident, SHERRI PENA, a Washington resident, YONG LIM, a Washington resident, AMBER LEE, a Washington resident, WHITNEY SARGENT, a Washington resident, YEVGENIY "JOHN" ZADNEPROVSKIY, a Washington resident, MARIA ZADNEPROVSKIY, a Washington resident, EUN YOUNG LEE, a Washington resident, KURY BERG, a Washington resident, TRACEY BERG, a Washington resident, PETE NITO, a Washington resident, JENELYN NITO, a Washington resident, WILLIAM DUNGER, a Washington resident, BANNY CHHOEUN, a Washington resident, SARETH CHHOEUN, a Washington resident, ADAM JACKSON, a Washington resident, SARA JACKSON, a Washington resident, LAYLA BUGADO, a Washington resident, BRAD BUGADO, a Washington resident, PHU DO, a Washington resident, HIEN TRAN, a Washington resident,

                    Plaintiffs,

        v.

AMERICAN SAFETY INDEMNITY COMPANY,

                    Defendant.

CASE NO. C17-5077 RJB

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 14) and the Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20-1). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

In this insurance coverage dispute, Plaintiffs assert that Defendant American Safety Indemnity Company ("ASIC") is liable for breach of contract, bad faith, violations of Washington's Insurance Fair Conduct Act ("IFCA") and Washington's Consumer Protection Act ("CPA") in connection with property damage to Plaintiffs' homes in the Valley Haven housing community. Dkt. 1. Both parties now move for summary judgment. For the reasons provided, the Defendant's Motion for Summary Judgment (Dkt. 14) should be granted and the Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20-1) should be denied.

## I. **RELEVANT FACTS AND PENDING MOTIONS**

Plaintiffs are purchasers of homes in the Fife, Washington Valley Haven housing development. Dkt. 1. The houses were built and sold by Highmark Homes, LLC and its principal owner and agent Tom Tollen (collectively "Highmark"). Dkt. 17-14. Highmark purchased the lots for the houses from First Savings Bank in phases pursuant to a purchase and sales agreement in which Highmark agreed to purchase a group of lots, and then had the right of first refusal on the other lots with preset deadlines. Dkt. 17-14, at 7-8. Highmark purchased the lots on which the homes were built in the following phases: around eight lots on March 30, 2012, another group on September 13, 2012, one lot on November 27, 2012, and the last group of lots on December 27, 2012. Dkts. 17-1, 17-2, 17-4, and 17-5. The first house was complete in July of 2012; the last in July 2013. Dkt. 17-9, at 4-5. Highmark had insurance policies with other carriers and Defendant ASIC. Dkt. 17-9.

1    After the Plaintiffs moved into the homes, they noticed various issues with the

2    construction, including problems with the siding and windows, and water intrusion.  Dkt. 17-6.

3    On May 15, 2014, Plaintiffs filed suit in Pierce County, Washington Superior Court against

4    Highmark and Mr. Tollen, asserting construction defect claims ("underlying case").  Dkt. 17-7;

5    *Hay v. Highmark, et al.,* Pierce County, Washington Superior Court case number 14-2-08793-0.

6    The Plaintiffs asserted that Highmark "constructed 29 homes located within Valley Haven

7    project development, in Fife, Washington" and "sold 29 homes located within Valley Haven

8    project development, in Fife, Washington."  *Id.*  Plaintiffs made claims against Highmark for

9    negligence, breach of contract, breach of express and implied warranties, and violations of the

10   Washington Condominium Act.  *Id.* Highmark, in turn, asserted crossclaims against some of its

11   subcontractors, AAA Framing Corporation, Absi Builders, Inc., and Afdem & Son's Dozing, Inc.

12   *See* Dkt. 17-13.

13       On May 22, 2014, Highmark tendered a claim, by letter, to Defendant ASIC (and the

14   other insurance companies), and included a copy of the Plaintiffs' complaint and other pleadings

15   filed in the underlying case.  Dkt. 15-4, at 2-47.  In the tender letter, Highmark indicated that 29

16   homeowners had filed suit against it.  Dkt. 15-4, at 3.  One of the other insurance carriers,

17   International Insurance Company of Hannover ("Hannover"), agreed to defend Highmark.  Dkt.

18   17-15.

19       On May 29, 2014, a representative of ASIC contacted Highmark's attorney, and asked for

20   information including: dates of completion and sale, when work was completed, other insurance,

21   job files, and subcontractor information.  Dkt. 17-8.  Highmark's attorney sent a response on

22   June 13, 2014.  Dkt. 17-9.  On June 23, 2014, ASIC sent an email and asked Highmark's lawyer

23   to "please confirm whether Highmark worked on all 29 homes."  Dkt. 15-5, at 2.  On July 15,

24

1  2014, Highmark's lawyer responded and stated that Highmark and its subcontractors constructed

2  all 29 homes at issue in the underlying case. *Id.*

3        ASIC sent Highmark a letter, dated August 7, 2014, and advised that there was no

4  coverage under the policies for its claim, citing, in part an exclusion for "tract housing." Dkt.

5  15-5, at 5-10. On October 21, 2014, Highmark re-tendered the claim, explaining that the tract

6  housing exclusion did not apply because "the houses weren't built and arranged according to a

7  single plan," Highmark wasn't the original developer, the original developer lost the lots in

8  foreclosure, Highmark initially bought a few lots, built homes on those lots, and then evaluated

9  whether to purchase more lots. Dkt. 15-5, at 13. The letter asserted that "Highmark did not by a

10  tract or any portion thereof, and never contemplated developing a unified community," so the

11  exclusion did not apply. *Id.*

12        On March 9, 2015, ASIC again denied Highmark's claim, citing the "tract housing"

13  exclusion. Dkt. 15-5, at 25-27.

14        In September of 2016, Plaintiffs settled the claims asserted in the underlying case against

15  Highmark for $4,250,000 and for an assignment of Highmark's potential claims against the

16  subcontractors and Highmark's insurance companies (except Hannover). Dkt. 17-15.

17        On November 21, 2016, Plaintiffs' attorney, in accord with assigned claims from

18  Highmark, mailed ASIC a Washington Office of the Insurance Commissioner's "Insurance Fair

19  Conduct Act 20 Day Notification Sheet," which was stamped as received by ASIC on November

20  28, 2016. Dkts. 15-5, at 29-30. This form identified "Highmark Homes LLC" as the first party

21  claimant and "Commercial General Liability Policy" as the line of insurance. *Id.*, at 29. It did

22  not identify a policy number. *Id.*

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

In response, ASIC's counsel contacted Plaintiffs' counsel and indicated that it did not

know to which case the notification applied or the basis for any complaints. Dkt. 15-5, at 32.

Plaintiffs' counsel responded by email on December 13, 2016, stating that: ASIC "insured Best

Quality Framing ("BQF") which contracted to [sic] with Highmark Homes to build homes in the

Valley Haven project. The contract required BQF to name Highmark Homes as an addition

insured. . . Highmark tendered the claims on February 19, 2015." Dkt. 15-5, at 32. The email

then lists policy numbers; none of the policy numbers listed in the email match the policy

numbers at issue here. *Id.*

This case was filed on January 31, 2017. Dkt. 1. On February 16, 2017, the Pierce

County, Washington Superior Court entered judgment in the underlying case against Highmark

in favor of the Plaintiffs for $4,462,344.00. Dkt. 19-1, at 2; *Hay v. Highmark, et al.,* Pierce

County, Washington Superior Court case number 14-2-08793-0.

Parties now file cross motions for summary judgment, and have both filed cross

responses and replies. Dkts. 14, 16, 18, 22, 24 and 25. Their arguments will be considered by

claim.

## II.     DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

1    of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

2    for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

3    (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

4    metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d).  Conversely, a genuine dispute over a

5    material fact exists if there is sufficient evidence supporting the claimed factual dispute,

6    requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*

7    *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

8    *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

9           The determination of the existence of a material fact is often a close question.  The court

10   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

11   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

12   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

13   of the nonmoving party only when the facts specifically attested by that party contradict facts

14   specifically attested by the moving party.  The nonmoving party may not merely state that it will

15   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

16   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

17   Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

18   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

19   **B.  WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

20   Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

21   diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.

22   *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  In applying Washington

23   law, the Court must apply the law as it believes the Washington Supreme Court would apply it.

24

1   *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

2   "'[W]here there is no convincing evidence that the state supreme court would decide differently,

3   a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'"

4   *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v.*

5   *Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

6   **C. CONTRACT CONSTRUCTION GENERALLY, CLAIMS FOR BREACH OF**
    **CONTRACT FOR INDEMNITY AND CLAIMS FOR BREACH OF DUTY TO**
7   **DEFEND HIGHMARK**

8       In Washington, an insurance policy is construed as a contract and given "'fair, reasonable,

9   and sensible construction as would be given to the contract by the average person purchasing

10  insurance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as modified* (Aug. 16,

11  2017)(*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124

12  Wash.2d 618, 627 (1994)).  "If terms are defined in a policy, then the terms should be interpreted

13  in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576

14  (1998).  "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia*, at 6.

15  If language in an insurance contract is susceptible to two different but reasonable interpretations,

16  it is considered "ambiguous." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 712 (2016).

17  However, where the policy language is clear and unambiguous, [a Washington] court will not

18  modify the contract or create ambiguity where none exists." *Xia,* at 6.

19      Plaintiffs assert that ASIC breached both its contractual agreement to indemnify Highmark

20  for Plaintiffs' claims in the underlying case and breached its duty to defend Highmark in that

21  case.  Dkt. 1.

22          1.  Agreement to Indemnify under the Policies and the "Tract Housing" Exclusion

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 7

1    The provision in each of the applicable policies at issue here, the "Condominium,

2   Apartment, Townhouse, or Tract Housing Coverage Limitation Endorsement," excludes

3   coverage for property damage "however caused, arising directly or indirectly, out of, or related

4   to" an insured or insured subcontractor's operations or work that is "incorporated into a tract

5   housing project or development." Dkts. 15-1, at 66; 15-2, at 69; and 15-3 at 69.  The exclusion

6   defines "tract housing" or "tract housing project or development" as: "any housing project or

7   development that includes the construction, repair or remodel of twenty-five (25) or more

8   residential buildings by our insured in any or all phases of the project or development." *Id.*

9    Exclusionary clauses, like the one at issue here, "are to be most strictly construed against

10   the insurer." *Am. Best Food,* at 406.  Based on the plain language of the policy, it is clear that the

11   exclusion applies.  Highmark constructed 29 homes in the Valley Haven development - over the

12   25 house limit.  "[W]hile exclusions should be strictly construed against the drafter, a strict

13   application should not trump the plain, clear language of an exclusion such that a strained or

14   forced construction results."  *Lui,* at 712.

15    In both their Response to ASIC's motion for summary judgment and in their own cross

16   motion for summary judgment, Plaintiffs assert that the word "phases" in the exclusion is an

17   ambiguous term, and should be construed to mean "a distinct stage of development." Dkts. 18,

18   at 10; and 20-1, at 17 (*citing* Websters II New Riverside University Dictionary).  Plaintiffs argue

19   that although the construction of the houses within each group of lots was "phased," "the actual

20   purchase . . . of lots was not" and were "completely separate and distinct transactions." *Id.*  So,

21   they maintain, the exclusion does not apply. *Id.*  Plaintiffs' forced construction of the

22   exclusion's language is not persuasive and does not comport Highmark's agent, Mr. Tollen's,

23   testimony.  He testified that Highmark purchased the lots for the houses from First Savings Bank

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 8

1  pursuant to a single purchase and sale agreement in which Highmark agreed to purchase a group

2  of lots, and then had the right of first refusal on the other lots, with preset deadlines for the

3  purchase of all 29 lots. Dkt. 17-14, at 7-8. He testified further, that they "would try to start at

4  least three homes a month, or possibly had five, six, or seven homes going at a time," and that

5  Haven Valley became the biggest project Highmark had "because [they] continually had

6  construction" going. Dkt. 17-14, at 30-31.

7      Plaintiffs contend that the exclusion only applies if all 25 or more homes were completed

8  within a single policy year. Dkts. 20-1, and 18. They assert that the construction of the homes at

9  issue took place over more than a single policy year, so the exclusion doesn't apply. *Id.* The

10 plain language of the policy doesn't support this interpretation. The exclusion doesn't contain

11 any time limits, and instead specifically provides that coverage is excluded at "in any or all

12 phases of the project or development."

13     Plaintiffs argue that if the exclusion applied, it would make the insurance policy illusory as a

14 whole. Dkts. 18, at 11; and 20-1, at 18. They point to Highmark's application for the policies,

15 which states that its business purpose was to do small groups of homes. *Id.* (*citing* Dkt. 17-16).

16 Plaintiffs maintain that Highmark followed its stated business purpose here. *Id.* They assert that

17 to find that the exclusion applies would mean that ASIC issued a policy that "specifically

18 excludes the work described in its policy application" and that would be "unfair, unjust an

19 unconscionable." *Id.*

20     Plaintiffs' assertion that Highmark only did "small groups of homes" is not an accurate

21 reflection of Mr. Tollen's testimony about Highmark's practices at Valley Haven. Further,

22 construing the exclusion as excluding projects or developments of 25 houses or more is

23 consistent with Highmark's application for insurance - they applied for insurance to build

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 9

1    projects of a small number of homes, and the policies excluded projects that built 25 or more

2    homes. Although Highmark estimated starting "100+" homes over "the next 12 months" in its

3    application, Highmark also stated that the nature of the business was building "single family

4    homes (small tracts) and townhomes" (Dkt. 17-16, at 2 and 12), and so, reconciling the two

5    portions of the application, it appears Highmark told ASIC that it did not intend to have a project

6    or development that included 25 or more homes. Highmark also stated in the application that it

7    did **not** "work on condominiums, townhouses, apartments or tracts over 5 units at any one time;

8    except for repair or remodeling of not more than 5 units within a development at any given

9    time." Dkt. 17-16, at 13. This answer also supports the idea that Highmark applied for

10    insurance to work on small developments and projects. Moreover, even if Highmark thought it

11    was insured for the Valley Haven project, "in Washington the expectations of the insured cannot

12    override the plain language of the contract." *Lui,* at 712. The tract housing exclusion applies;

13    ASIC did not breach its duty to indemnify Highmark under the insurance policies.

14       2.   Duty to Defend

15       In Washington, "the duty to defend is different from and broader than the duty to

16    indemnify." *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wash.2d 398, 404 (2010)(*internal*

17    *citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the

18    insured's liability, whereas the duty to defend arises when the policy could conceivably cover

19    allegations in a complaint. *Xia*, at 6 (*internal citations omitted*). "[A]n insurer must defend a

20    complaint against its insured until it is clear that the claim is not covered." *Id.* (*citing Am. Best*

21    *Food*, at 405).

22       "The duty to defend generally is determined from the 'eight corners' of the insurance

23    contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co*., 180 Wn.2d 793, 803

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 10

(2014). The two exceptions to this rule favor the insured. *Id.* (*internal citations omitted*). "First,

if coverage is not clear from the face of the complaint but coverage could exist, the insurer must

investigate and give the insured the benefit of the doubt on the duty to defend." *Id.* Second, if

the allegations in the complaint are ambiguous or conflict with facts known to the insurer, "facts

outside the complaint may be considered." *Id*. at 803-04. "These extrinsic facts may only be

used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense

duty." *Id.* "[I]f there is any reasonable interpretation of the facts or the law that could result in

coverage, the insurer must defend." *Am. Best Food*, at 413. ).

ACIS did not breach its duty to defend Highmark. In the complaint in the underlying

case, the Plaintiffs asserted that Highmark "constructed 29 homes located within Valley Haven

project development, in Fife, Washington" and "sold 29 homes located within Valley Haven

project development, in Fife, Washington." Dkt. 17-7; *Hay v. Highmark, et al.,* Pierce County,

Washington Superior Court case number 14-2-08793-0. The policy clearly and unambiguously

excludes a housing project or development of 25 homes or more. There is no reasonable

interpretation of the policy or complaint that could result in coverage. The duty to defend "is not

triggered by claims that clearly fall outside the policy." *National Sur. Corp. v. Immunex Corp.,*

176 Wn.2d 872, 879 (2013).

In their Motion for Summary Judgment and Response to ASIC's motion, Plaintiffs assert

that ACIS improperly used extrinsic evidence in making its determination to deny Highmark's

tender. Dkts. 18 and 20-1. They point out that the information gained was used to determine

that Highmark did, in fact, build all 29 homes and the timeframe in which the homes were built.

*Id.* Plaintiffs cite no authority that an insurance company must defend if it chooses to

investigate. Under Washington law, "[t]he insurer is entitled to investigate the facts and dispute

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

1  the insured's interpretation of the law. . . " *Am. Best Food*, at 405.  It is only if "there is any

2  reasonable interpretation of the facts or the law that could result in coverage, the insurer must

3  defend." *Id.*

4      ASIC's motion for summary dismissal of the claim for breach of the duty to defend

5  should be granted, Plaintiffs' motion for summary judgment on the claim should be denied, and

6  the claim dismissed.

7      **D. CLAIMS FOR THE TORT OF BAD FAITH**

8      "An insurer acts in bad faith if the refusal to defend was unreasonable, frivolous, or

9  unfounded. Thus, an insurer takes a great risk when it refuses to defend on the basis that there is

10  no reasonable interpretation of the facts or the law that could result in coverage." *Xia,* at 6

11  (*internal quotations and citations omitted*).

12      ASIC's motion for summary dismissal of the claim for bad faith should be granted and the

13  claim dismissed.  "When an insurer correctly denies a duty to defend, there can be no bad faith

14  claim based on that denial." *United Svcs. Auto Ass'n v. Speed,* 179 Wn.App. 184, 203 (2014).

15      **E. CLAIMS FOR VIOLATIONS OF IFCA**

16      Plaintiffs assert in their complaint that ASIC's failure to defend Highmark violates IFCA

17  under RCW 48.30.015 and WAC 284-30-330.  Dkt. 1.

18      Under IFCA, an insurance company owes a duty of good faith to its insured.  RCW

19  48.30.010, *et seq*.  An insurance company is prohibited from unreasonably denying a claim for

20  coverage or a claim for benefits.  RCW 48.30.015. WAC 284-30-330, contains a non-exclusive

21  list of "unfair practices," which includes:

22          (1) Misrepresenting pertinent facts or insurance policy provisions.
            (2) Failing to acknowledge and act reasonably promptly upon communications
23          with respect to claims arising under insurance policies. . .
            (4) Refusing to pay claims without conducting a reasonable investigation. . .

24

(5) Failing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted. . .
(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. . .

A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.015.  RCW 48.30.015 (5)(a).

Plaintiffs' claim for violations of IFCA should be dismissed.  Plaintiffs fail to point to evidence that ASIC violated any of the provisions of WAC 284-30-330, and so fail to show that RCW 48.30.015 was violated.  Plaintiffs fail to show that ASIC breached its duty to defend or indemnify Highmark under the insurance policy.  In so finding, the Court need not reach ASIC's alternative arguments, that Plaintiffs failed to provide it proper notice of a claim because the claim form was defective, or that Plaintiffs, as third party claimants, do not have a cause of action under IFCA because the statute only recognizes causes of action for first party claimants.

Plaintiffs' motion for summary judgment on their IFCA claims should be denied, ASIC's motion to summarily dismiss Plaintiffs' IFCA claims should be granted, and the claims dismissed.

## F. CLAIM FOR VIOLATIONS OF CPA

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.  "'A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se

1 unfair trade practice by virtue of the legislative declaration in RCW 19.86.170.'" *Perez-*

2 *Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685, 389 P.3d 476, 483

3 (2017)(*quoting Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 921 (1990)).

4     Plaintiffs' claims under the CPA should be dismissed. Plaintiffs advance the same arguments

5 for their breach of the duty to defend and bad faith claims to support their CPA claims. They are

6 equally unpersuasive. Plaintiffs fail to show that ASIC engaged in an "unfair or deceptive act or

7 practice." Further, Plaintiffs failed to show that Highmark suffered an injury that was caused by

8 ASIC's unfair act or practice. Plaintiffs' motion for summary judgment on their CPA claims

9 should be denied, ASIC's motion to summarily dismiss Plaintiffs' CPA claims should be

10 granted, and the claims dismissed.

11 **III.   ORDER**

12     Therefore, it is hereby **ORDERED** that:

13        • Defendant's Motion for Summary Judgment (Dkt. 14) **IS GRANTED**; and

14        • Plaintiffs' Motion for Summary Judgment (Dkt. 16, refiled as 20-1) **IS DENIED;**

15        • **THIS CASE IS DISMISSED**.

16     The Clerk is directed to send uncertified copies of this Order to all counsel of record and

17 to any party appearing pro se at said party's last known address.

18     Dated this 19th day of September, 2017.

19

20              ROBERT J. BRYAN

21              United States District Judge

22

23

24